CONNECTICUT IMPORTING CO. v.
FRANKFORT DISTILLERIES,
Inc., et al.
No. 104.

District Court, D. Connecticut.
June 10, 1940.

Woodruff & Klein, of New Haven, Conn., for plaintiff.

Raymond E. Hackett, of Stamford, Conn., for Frankfort Distilleries, Inc.

Herman Levy, of New Haven, Conn., for Libbey & R. C. Williams Corporation.

George H. Cohen, of Hartford, Conn., for David A. Rosow.

HINCKS, District Judge.

This is a civil action for damages under the Sherman Act, 15 U.S.C.A. §§ 1–7, 15 note. The case is now before the Court upon the motion of a defendant that the Court, under Federal Rules of Civil Procedure, Rule 53, 28 U.S.C.A. following section 723c, appoint a Special Master to report to the court on several items relating to plaintiff's claim of damages as stated in Paragraphs 24 and 25 of the substituted complaint and plaintiff's Exhibit 1, appended thereto.

The complaint alleges that the plaintiff, by a conspiracy of the defendants, was wrongfully prevented after January, 1937, from dealing in Frankfort products, a business in which it had theretofore been profitably engaged. The plaintiff claims thereby to have sustained a loss of profits and for this loss it claims treble damages.

As a base for the computation of profits alleged to have been lost for the period subsequent to January, 1937, proof of the plaintiff's profits from dealings in Frankfort products prior to 1937 obviously will be required. From plaintiff's own Exhibit 1 and from the affidavit annexed to defendant's motion it is evident that the taking of such proofs will involve a complicated task and one of peculiar difficulty for a jury. For the plaintiff owns substantial real estate which it uses for purposes of its business; and it does a substantial business in the products of many other producers as well as Frankfort. To ascertain the plaintiff's profits from Frankfort is primarily an accounting task requiring the examination of plaintiff's inventories, sales invoices, books of account, and a mass of documentary evidence covering a substantial period of time as well as numerous complicated computations to accomplish the proper allocation of overhead expenses to the sales of Frankfort products.

Experience has demonstrated that the conventional solution of the problem is far from satisfactory. For if the task is left to expert accountants who examine the records and testify to their conclusions therefrom wide variations between the expressed conclusions are apt to result. Whether one expert or several are called, prudence generally requires that the validity of the expert's conclusions be tested by highly technical and detailed cross-examination which may consume days of time. The net result is a voluminous mass of evidence, oral and documentary, much of it conflicting, which in the nature of human limitations tends to bewilder rather than to clarify the jurors' minds.

To be sure, under federal procedure the judge has broad powers of comment upon the evidence. And judicial comment upon such complicated situations as these, if ac-

curate and illuminating, would doubtless be particularly appropriate. But the existence of the power of comment is seldom an adequate solution. For seldom can a judge in the stress of trial sufficiently digest, sift and weigh the mass of detailed evidence in such a case to be able to offer truly adequate comment which is both helpful and sound.

 The prospect of these difficulties induces me to follow the suggestion of defendant's motion that we utilize the procedure available under Rule 53. I shall appoint a Master whose essential qualification shall be a fair-minded capacity to deal with details and conflicts of evidence in the accounting field. The Master, after meetings under the procedure outlined in Rule 53, will prepare and file in triplicate his report containing findings of fact and conclusions of fact. Under Rule 53(e) (3) the parties are entitled to be heard on any objections in point of law to the Master's report. Obviously it will be advisable that any such objections shall be disposed of before trial. This will not merely shorten the trial by eliminating the hiatus which would be caused by extensive arguments in the midst of trial, but also will enable the parties in preparing for trial to know as nearly as may be the situation with which they will be confronted. To this end, I shall require that any party objecting to the report shall do so by filing written exceptions within 20 days after the report is filed.

 If the report or any part thereof is accepted notwithstanding such exceptions as may be filed, later it will be read to the jury at an appropriate time in the trial, accompanied with an instruction that it represents the considered findings and conclusions of a judicial officer of the court upon all the evidence which the parties have deemed material, and as such is to be treated by the jury as an item of evidence properly in the case entitled to such weight as the jury in its best judgment shall accord to it.

This procedure will at least make it possible to get before the jury considered findings having the hallmark of impartiality, untainted with passion or prejudice. It may, perhaps, shorten the trial by making it possible for one party, and possibly all, to forego the time-consuming luxury and uncertainty of other evidence on the subject-matter of the report. Conceivably, even, the parties might stipulate that a reading of the underlying findings might be omitted leaving only the Master's conclusions to be read to the jury.

 The power of the court so to proceed is beyond question. It exists independent of the rule. Ex parte Peterson, 253 U.S. 300, 40 S.Ct. 543, 64 L.Ed. 919; Irving Trust Co. v. Trust Co. of New Jersey, 2 Cir., 75 F.2d 280; Veneri v. Draper, 4 Cir., 22 F.2d 33. Rule 53 serves but to outline the procedure to be followed when the power is exercised.

 Any party who so desires is doubtless free to put before the jury any competent evidence at variance with the Master's conclusions and to submit any resulting conflict to the jury. There will, however, be no opportunity to discredit the Master's conclusions with the jury by the contention that vital evidence submitted to the jury was not before the Master. For the rule in subdivision (e) (3) expressly provides that in jury actions "the master shall not be directed to report the evidence." This provision clearly, and very sensibly, contemplates that for all purposes of the Master's report the jury shall not be burdened with the mass of evidence underlying the findings. That being so, any offer to show the content (positive or negative) of the evidentiary record which was before the Master would be excluded and the court might properly instruct the jury that since under the prescribed procedure, Rule 53(d), every party had as much opportunity to present evidence to the Master as to the jury it must be presumed that all pertinent evidence within the scope of the Master's report had been made available to the Master and had received judicial consideration by the Master in formulating his report and by the court in accepting the report.

 I cannot agree, however, that the Master's report should have a scope as broad as that for which the defendant, Frankfort, contends. For the defendant urges that the Master should also report on the question whether or not, prior to 1937, the plaintiff itself participated in an illegal conspiracy as a result of which its profits were improperly swollen. I quite agree that if such was the case the profits thus illegally enhanced may not be used as a basis for estimating the profits which after January, 1937, would have been earned by the plaintiff but for the defendant's wrong. But I hold that the subject-matter of possible participation by the plaintiff in an illegal

conspiracy may not properly be referred to a Master for report. For this is not a subject-matter which is complicated by such difficulties as are involved in an ascertainment of profits; difficult though it may be, this question involves only difficulties of the same essential nature as those involved in the charge of the conspiracy against the defendants.

■ However, in view of the defendants' contention that for some time prior to 1937 the plaintiff's profits were in fact swollen by its own participation in a conspiracy, the Master's finding should be so shaped as to show the profits for the three years prior to 1937 separately for annual or semi-annual periods. If this is done, it will be a simple matter for the court to instruct the jury to discard as a base for computing the lost profits any periods prior to 1937 in which it shall find that the plaintiff's profits were swollen by its own illegal activities.

■ The defendant also asks that the Master find the profits from the plaintiff's total business prior to 1937. This I think is unnecessary and improper. The actual profits, prior to the alleged wrong, from plaintiff's dealings in Frankfort products is the figure which the jury will need to compute the lost profits caused by the wrong. If, to find the profit from Frankfort products, the Master shall find it necessary to ascertain the entire gross income and the entire expenses in order to establish a proper ratio between income and expense for application to the income from Frankfort products, the order of reference will be broad enough to permit him to do so. But the order should also be sufficiently flexible to enable the Master to use any other valid method of ascertaining the Frankfort profits.

■ The defendant Frankfort also asks that the Master report on plaintiff's profits actually earned in the years 1937 to 1939 inclusive. This, I think, is a proper request. If it is the fact that the loss of opportunity to deal in Frankfort products resulted in larger profits to the plaintiff from its dealings in other products so that plaintiff's aggregate profits after the alleged wrong were as great, or greater than before, the plaintiff's loss of Frankfort profits would not constitute an item of damage, at least in the absence of proof that but for the wrong the plaintiff would have earned profits on Frankfort dealings in addition to the profits which actually accrued.

It is accordingly ordered that subject to the limitations outlined above, the defendant's motion be granted. An order accordingly may be settled in chambers.