302 F.2d 91
 C. W. BURGESS, Mrs. C. W. Burgess, Cora Lee Carter, James E. Duncan, Marjorie Duncan, Clifford H. Griffith, Ellen L. Griffith, Edith M. Jay, Eleanor L. Smart, Trilby W. Macredie, Harmon B. Martin, Sr., Harmon B. Martin, Jr., Verna E. Moore, William M. Moore, Trilby M. Nichols, Ethel R. Poplin, W. L. Poplin, Sr., Michael Wayne Poplin, W. L. Poplin, Jr., Gordon L. Ragsdale, Hannie G. Ragsdale, James Duncan, Mrs. James Duncan, Petitioners,
v.
The Honorable Ashton H. WILLIAMS, United States District Judge for the Eastern District of South Carolina, Respondent.
 No. 8570.
 United States Court of Appeals Fourth Circuit.
 Argued March 28, 1962.
 Decided May 1, 1962.
 
 Hans F. Paul and Robert B. Wallace, Charleston, S. C., in support of petition.
 Louis M. Shimel, Charleston, S. C., in opposition thereto.
 Before SOBELOFF, Chief Judge, and HAYNSWORTH and BRYAN, Circuit Judges.
 SOBELOFF, Chief Judge.
 
 
 1
 Sixty-eight petitioners seek a writ of mandamus directing the vacation of an order of the late District Judge Ashton H. Williams of the Eastern District of South Carolina. By that order the court referred to a master for preliminary findings of fact a suit brought by a trustee in bankruptcy to set aside alleged preferences to these petitioners and to thirty-nine other persons. The petitioners claim that the reference to a master denies each of them his right to a trial by a jury. They also request severances so that there will be a separate trial as to each payment received from the bankrupt. We have concluded that a writ of mandamus should not issue in this case.
 
 
 2
 The bankrupt is Henry H. Hernandez, Sr., who did business in the city of Charleston, South Carolina, and elsewhere as the Chicora Investment Company. Over 1500 individuals had made payments to the Chicora Investment Company upon representations to them by Hernandez that the money would be loaned to the general public and earn 2% per month. Each individual making such payments was to receive his proportionate share of the expected profits and, in addition, commissions for inducing other people to make similar payments to the Chicora Investment Company. Hernandez was given complete authority over the management of the money so accumulated. However, it is alleged that the contributors to the fund retained the right to withdraw their money from the company at any time. Acting upon this understanding, 107 individuals demanded and received from Hernandez in sixty-six payments a total of over $124,000.00 within four months before the filing of Hernandez's petition in bankruptcy.
 
 
 3
 Thereafter, the trustee in bankruptcy brought suit against these 107 individuals, alleging that the money they received constituted preferences, voidable under section 60, sub. b of the Bankruptcy Act. 11 U.S.C.A. § 96, sub. b. The petitioners raised two defenses: Hernandez was not insolvent at the time these payments were made, and if he was, the petitioners had neither knowledge nor reasonable cause to believe that he was insolvent. The defense that Hernandez was not in fact insolvent was predicated upon the assertion that the petitioners and most, if not all, of the other contributors to the Chicora Investment Company were not creditors of Hernandez. Instead, it is alleged that they were joint adventurers with him.
 
 
 4
 The petitioners moved for severance and trial by jury in each case. The trustee in turn moved under Federal Rules Civ.P., Rule 53, 28 U.S.C.A., that the case be referred to a master to take testimony and make a report on the issue of insolvency. The District Court denied the petitioners' motions, and granted the motion of the trustee, but reserved the right "upon the coming in of the Master's Report, upon motion of any of the parties herein, or of its own motion, in those instances in which jury trials had been demanded, if the Court deems it appropriate, to take further testimony before a jury or juries and to submit to it or them such issue or issues as may then seem to the Court to be proper."
 
 
 5
 We think that we have jurisdiction to issue the writ of mandamus in this case under 28 U.S.C.A. § 1651(a). A majority of the Supreme Court in La Buy v. Howes Leather Co., 352 U.S. 249, 254-255, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957), upheld the jurisdiction of a court of appeals to issue a writ of mandamus which required a district court to rescind its order invoking the aid of a master in an anti-trust case.[1] Furthermore, we think that the fact that Judge Williams died subsequent to the filing of this writ of mandamus does not affect our power to issue the writ.[2] The order remains in effect even though the judge who made it has passed away. It would be unduly formalistic to permit relief against an abuse of discretion by issuing a writ of mandamus only so long as the judge remains in office, and to deny relief in cases where the judge has died since making the order. The anomaly is avoided by issuing the writ of mandamus, not to a district judge as an individual, but directed to the District Court which continues in uninterrupted existence despite the vacancy in the office arising from the Judge's death. Furthermore, once there is a successor to the District Judge, then according to the 1961 amendment to Federal Rule 25(d), he would be automatically substituted in any pending judicial proceeding for the deceased Judge.[3] There is no reason to doubt that federal district judges, who are of course public officers, come within this rule.
 
 
 6
 Nevertheless, we decline to issue the writ in this instance because we think that the District Judge acted not beyond the scope of his discretion in referring the case to a master. Federal Rule 53 (b) provides: "A reference to a master shall be the exception and not the rule. In actions to be tried by a jury, a reference shall be made only when the issues are complicated; in actions to be tried without a jury, save in matters of account, a reference shall be made only upon a showing that some exceptional condition requires it." (Emphasis added.)
 
 
 7
 The issues in this case are indeed complicated. In order to determine whether the bankrupt was insolvent when the payments were made to the petitioners, it is necessary to decide as to each of the 1500 contributors to the Chicora Investment Company whether he was a creditor of the bankrupt, as the trustee maintains, or a joint adventurer with him, as the petitioners contend. In each instance, this depends upon the representations made by Hernandez to the contributor and the understanding reached between them. If at least some of these contributors entered into a joint adventure with Hernandez, it would then become necessary to calculate whether the bankrupt's assets exceeded his liabilities when the payments in question were made. A report by a master, distilling the mass of facts involved, will certainly aid a correct disposition of the case.[4]
 
 
 8
 While the petitioners clearly are entitled to a trial by jury,[5] a report by a master will not impinge upon this right.[6] Such right was specifically preserved in the District Judge's order. Following submission of the master's report, which is given prima facie effect, each petitioner will be afforded the opportunity to present testimony and make arguments to the jury, both with respect to the insolvency of the bankrupt at the time of the payments and with respect to whether that particular petitioner was a creditor of the bankrupt.[7] In addition, the burden will rest upon the trustee to prove to a jury that the person receiving the alleged preference knew or had reason to know of the insolvency of the bankrupt, an issue properly withheld from the master's consideration.
 
 
 9
 Since we find no abuse of the District Court's discretion in the order referring the case to a master, it follows that the court properly denied at that time the petitioners' motions for severances.
 
 
 10
 Petition for mandamus denied.
 
 
 
 Notes:
 
 
 [1]
 Although a writ of mandamus partakes of the nature of an interlocutory appeal, the authority of La Buy for issuing such a writ in this type of case has not been upset by the more recent Supreme Court exhortation in DiBella v. United States, 369 U.S. 121, 82 S.Ct. 654 (1962), against piecemeal appeals. While the Supreme Court in the latter case failed to cite La Buy and noted the desirability of strict adherence to the final judgment rule, it also emphasized the fact that DiBella was a criminal case which requires a more speedy adjudication than a civil case
 
 
 [2]
 See United States v. O'Connor, 291 F.2d 520, 524 note 1 (2d Cir. 1961); Hartley Pen Co. v. United States District Court, 287 F.2d 324, 331-332 (9th Cir. 1961)
 
 
 [3]
 Rule 25(d) (1) now provides, in pertinent part:
 "When a public officer is a party to an action in his official capacity and during its pendency dies, resigns, or otherwise ceases to hold office, the action does not abate and his successor is automatically substituted as a party."
 
 
 [4]
 The few decided cases which treat the propriety of referrals to a master where a jury trial has been demanded offer little guidance. Because the cases involve exceedingly diverse fact situations, it is difficult to determine the standards applied by other courts as to how complicated a case must be before a referral can be upheld as within the district judge's discretion. See Tendler v. Jaffe, 92 U.S. App.D.C. 2, 203 F.2d 14, 16 (1953); Barnard-Curtiss Co. v. Maehl, 117 F.2d 7, 11 (9th Cir. 1941); cf. Coyner v. United States, 103 F.2d 629, 635 (7th Cir. 1939) (case arose before Federal Rule 53(b) was adopted); United States v. Wilson, 21 F.R.D. 173 (N.D.Tex.1957). The more numerous cases involving referrals to masters in non-jury cases are not controlling here since the test is not whether the "issues are complicated," but whether there is to be an accounting or "some exceptional condition requires it." See, e. g., La Buy v. Howes Leather Co., 352 U.S. 249, 255-260, 77 S.Ct. 309 (1957); Rogers v. Societe Internationale Pour Participations Industrielles et Commerciales, 107 U.S.App.D.C. 388, 278 F.2d 268 (1960); In re Watkins, 271 F.2d 771 (5th Cir. 1959)
 
 
 [5]
 Schoenthal v. Irving Trust Co., 287 U.S. 92, 53 S.Ct. 50, 77 L.Ed. 185 (1932); Black v. Boyd, 248 F.2d 156, 162 (6th Cir. 1957)
 
 
 [6]
 Ex parte Peterson, 253 U.S. 300, 309-312, 40 S.Ct. 543, 64 L.Ed. 919 (1920); Sutton v. Johnson Cotton Co., 114 F.2d 302 (4th Cir. 1940)
 
 
 [7]
 Fed.R.Civ.P. 53(e) (III); see 5 Moore, Federal Practice § 53.14 [4] (1951)